# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JONATHAN MANN and BRIAN L. FRYE,<br><br>                     Plaintiffs,<br><br>     v.<br><br>SECURITIES AND EXCHANGE COMMISSION, ERIC I. BUSTILLO, GARY GENSLER, CAROLINE A. CRENSHAW, JAIME E. LIZÁRRAGA, HESTER M. PEIRCE, and MARK T. UYEDA, in their official capacities,<br><br>                     Defendants. | Case No. 24-CV-01881<br><br>JUDGE GUIDRY<br><br>MAG. ROBY |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

    A.   Congress committed enforcement actions to the Commission's discretion. .......... 3

    B.   NFTs under the federal securities laws ................................................................ 3

    C.   Plaintiffs have been selling NFTs for years with no alleged action by the Commission. ....................................................................................................... 5

    D.   Frye's no-action letter requests to the Commission staff recognized his NFT offerings could be securities offerings. .................................................................. 6

    E.   Despite their alleged fear of an SEC investigation, Plaintiffs have continued to create and sell NFTs and planned their Prospective Offerings. .............................. 7

    F.   Plaintiffs' Declaratory Judgment Action. ............................................................ 9

STANDARD OF REVIEW ............................................................................................ 9

ARGUMENT ................................................................................................................ 10

I.   This Court lacks jurisdiction because sovereign immunity bars this lawsuit. ................. 10

    A.   Plaintiffs challenge matters committed by law to agency discretion. ................... 12

    B.   Plaintiffs do not identify any final agency action affecting them in a specific way that has caused them a legal wrong. .......................................... 13

II.   Plaintiffs' Complaint does not present a justiciable case or controversy. ........................ 16

    A.   Plaintiffs lack standing. ....................................................................................... 16

    B.   Plaintiffs' claim is not ripe. ................................................................................. 21

CONCLUSION ............................................................................................................. 25

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alabama-Coushatta Tribe of Tex. v. United States*,

    757 F.3d 484 (5th Cir. 2014) ................................................................... 10, 11, 12, 13, 14, 15, 16

*Am. Fed'n of Gov't Emps. v. O'Connor*, 747 F.2d 748 (D.C. Cir. 1984).................................... 23

*AT&T Corp. v. FCC*, 349 F.3d 692 (D.C. Cir. 2003) .................................................................. 25

*Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571 (N.D. Tex. 2021) ......................... 19, 20

*Bennett v. Spear*, 520 U.S. 154 (1997) ...................................................................................... 15

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024)............................................................ 18

*Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023)............................................. 19, 20

*Calderon v. Ashmus*, 523 U.S. 740 (1998) ................................................................................. 24

*Ciba-Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986)........................................................... 22

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................................. 17, 19

*Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*, 53 F.4th 361 (5th Cir. 2022).......................... 9

*Consensys Software, Inc. v. SEC*, 2024 WL 4438969 (N.D. Tex. Sept. 19, 2024) ..................... 22

*Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127 (5th Cir. 2009) ....... 16

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253 (5th Cir. 2020) .......................................... 10

*DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215 (5th Cir. 2021) ........................................ 23

*Dufoe v. DraftKings Inc.*, 2024 WL 3278637 (D. Mass. July 2, 2024)...................................... 4, 5

*Elldakli v. Garland*, 64 F.4th 666 (5th Cir. 2023) ...................................................................... 11

*Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134 (5th Cir. 2009)...................................... 1

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ............................................................. 17

*FDIC v. Meyer*, 510 U.S. 471 (1994) ......................................................................................... 10

*Flast v. Cohen*, 392 U.S. 83 (1968) .................................................................................... 2

*Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422 (S.D.N.Y. 2023) ....................................... 4, 5, 24

*FTC v. Standard Oil*, 449 U.S. 232 (1980) ............................................................................ 1

*G.K. v. D.M.*, 2022 WL 19403388 (E.D. La. July 22, 2022) ................................................. 18

*Gabelli v. SEC*, 568 U.S. 442 (2013) .................................................................................... 3

*Gen. Fin. Corp. v. FTC*, 700 F.2d 366 (7th Cir. 1983) .......................................................... 11

*Gentile v. SEC*, 974 F.3d 311 (3d Cir. 2020) ........................................................................ 3, 13

*Glenewinkel v. Carvajal*, 2022 WL 179599 (N.D. Tex. Jan. 20, 2022) ................................ 14

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) ............................................................. 24

*Gulfport Energy Corp. v. FERC*, 41 F.4th 667 (5th Cir. 2022) ............................................. 19

*Harper v. O'Neal*, 2024 WL 3845444 (S.D. Fla. Aug. 16, 2024) .......................................... 4, 5

*Heckler v. Chaney*, 470 U.S. 821 (1985) .............................................................................. 3, 12, 13

*Hodl L., PLLC v. SEC*, 2023 WL 4852322 (S.D. Cal. July 28, 2023) ..................................... 22

*Hodl L., PLLC v. SEC*, 2024 WL 3898607 (9th Cir. Aug. 22, 2024) ...................................... 17

*In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264 (5th Cir. 2001) ................................... 11

*In re Living Benefits Asset Mgmt., L.L.C.*, 916 F.3d 528 (5th Cir. 2019) ............................. 4

*Kokesh v. SEC*, 581 U.S. 455 (2017) .................................................................................... 3, 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ....................................... 9

*Louisiana v. United States*, 948 F.3d 317 (5th Cir. 2020) .................................................... 13

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) .............................................................. 11

*Montez v. U.S. Dep't of the Navy*, 392 F.3d 147 (5th Cir. 2004) .......................................... 7

*Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803 (2003) ............................................................ 25

*Nat'l Press Photographers Assoc. v. McCraw*, 90 F.4th 770 (5th Cir. 2024) ...................... 17

iii

*Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998) ...................................................... 21, 25

*Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000) ........................................... 21, 23, 25

*Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649 (5th Cir. 2012) ........................................... 10

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) ............................................... 24

*Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315 (5th Cir. 2002) .................................................... 18

*Rowan Ct. Subdivision 2013, Ltd. P'ship v. La. Hous. Corp.*,

    2017 WL 4018859 (M.D. La. Sept. 12, 2017) ........................................................................ 15

*Rush v. Barham*, 618 F. App'x 789 (5th Cir. 2015) .................................................................... 16

*Sample v. Morrison*, 406 F.3d 310 (5th Cir. 2005) ..................................................................... 16

*Sanderson v. H.I.G. P-XI Holding, Inc.*, 2000 WL 1042813 (E.D. La. July 27, 2000) ............... 24

*SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285 (2d Cir. 2014) .................................................. 3

*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) ....................................................................... 4, 23

*Sierra Club v. Peterson*, 228 F.3d 559 (5th Cir. 2000) ............................................................... 15

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) .................................................... 10

*St. Tammany Par. ex rel. Davis v. FEMA*, 556 F.3d 307 (5th Cir. 2009) ..................................... 10

*Tcherepnin v. Knight*, 389 U.S. 332 (1967) ................................................................................. 4

*Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303 (D.C. Cir. 2010) ......................................... 19

*Texas v. United States*, 523 U.S. 296 (1998) .............................................................................. 22

*TOTAL Gas & Power N. Am., Inc. v. FERC*,

    859 F.3d 325 (5th Cir. 2017) ............................................................................................... 21

*Veldhoen v. U.S. Coast Guard*, 35 F.3d 222 (5th Cir. 1994) ....................................................... 15

*Walmart, Inc. v. DOJ*, 21 F.4th 300 (5th Cir. 2021) ........................................... 14, 16, 21, 23, 25

*Webster v. Doe*, 486 U.S. 592 (1988) ........................................................................................ 12

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) .................................................................. 24

*Zimmerman v. City of Austin, TX*, 881 F.3d 378 (5th Cir. 2018)................................................ 18

**STATUTES**

Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*

5 U.S.C. § 551(4) ........................................................................................................................ 14

5 U.S.C. § 551(6) ........................................................................................................................ 14

5 U.S.C. § 551(7) ........................................................................................................................ 14

5 U.S.C. § 551(8) ........................................................................................................................ 14

5 U.S.C. § 551(10) ...................................................................................................................... 14

5 U.S.C. § 551(11) ...................................................................................................................... 14

5 U.S.C. § 551(13) ...................................................................................................................... 13

5 U.S.C. § 701(a)(2) ............................................................................................................. 11, 12

5 U.S.C. § 701(b)(2) .................................................................................................................... 13

5 U.S.C. § 702 ....................................................................................................................... 12, 13

5 U.S.C. § 704 ....................................................................................................................... 11, 13

Securities Act of 1933, 15 U.S.C. §§ 77a, *et seq.*

15 U.S.C. § 77(d) .......................................................................................................................... 3

15 U.S.C. § 77(e) .......................................................................................................................... 3

15 U.S.C. § 77b(a) ........................................................................................................................ 4

15 U.S.C. § 77t(a) ....................................................................................................................... 12

15 U.S.C. § 77t(b) ................................................................................................................... 3, 12

Securities Exchange Act of 1934, 15 U.S.C. §§78a, *et seq.*

15 U.S.C. § 78u(a) ...................................................................................................................... 13

15 U.S.C. § 78u(d) ................................................................................................ 3, 13

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 9

**OTHER AUTHORITIES**

U.S. Const. art. III, § 2 ............................................................................................ 16

Brian L. Frye, *How to Sell NFTs Without Really Trying*,

13 Harv. J. of Sports & Ent. Law 113 (2022) ...................................................... 2, 5

*In re Flyfish Club, LLC*, Securities Act Release No. 11305,

2024 WL 4203737 (Sept. 16, 2024) ........................................................................ 8

*In re Impact Theory, LLC*, Securities Act Release No. 11226,

2023 WL 5530012 (Aug. 28, 2023) ...................................................................... 16

*In re Stoner Cats 2, LLC*, Securities Act Release No. 11233,

2023 WL 5956272 (Sept. 13, 2023) ...................................................................... 16

*No Action Letters*, U.S. Sec. & Exchange Comm'n, *https://www.investor.gov/introduction-*

*investing/investing-basics/glossary/no-action-letters* (last visited Oct. 22, 2024) ................... 6

U.S. Sec. & Exch. Comm'n, *SEC Docket*, Vol. 21, No. 5, Release No. 6253 (Nov. 11, 1980)

(available at https://www.sec.gov/files/rules/interp/33-6253.pdf) ............................................. 6

Defendants in this action—the Securities and Exchange Commission, as well as its five Commissioners and the Regional Director of its Miami Regional Office in their official capacities (collectively, "the SEC" or "the Commission")—respectfully move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

## INTRODUCTION

Plaintiffs Jonathan Mann and Brian L. Frye seek a declaration pursuant to the Declaratory Judgment Act ("DJA") that hypothetical future offerings of certain "non-fungible tokens" (NFTs) described in the Complaint ("Prospective Offerings") do not run afoul of the federal securities laws. They do not, however, challenge any law, any regulation, or any action by the Commission against them. They do not allege any pending investigation or litigation. Instead, they want the Court to confirm their belief that their hypothetical future actions will not trigger the application of the federal securities laws. But this Court lacks jurisdiction to do so, and this Court should not sanction Plaintiffs' improper attempt to use the DJA as a "'means of turning prosecutor into defendant'" before the Commission has made any prosecutorial decisions. *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134, 141 (5th Cir. 2009) (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 243 (1980)). Plaintiffs effectively request that this Court adjudicate the inverse of an enforcement action that the Commission has not brought—and may never bring. There is no basis for this extraordinary role reversal, making the Commission a defendant on the other side of Plaintiffs' hypothetical legal questions. Indeed, Congress has committed the enforcement of federal securities laws to the Commission's discretion and has not waived sovereign immunity for Plaintiffs to bring such speculative lawsuits.

Nor should the Court encourage Plaintiffs, who seem to want to goad the SEC into action. In law review articles he has published, Plaintiff Frye admits that he "created an NFT

1

collection as a joke, a spoof on the concept of NFTs."  Brian L. Frye, *How to Sell NFTs Without Really Trying*, 13 Harv. J. Sports & Ent. L. 113, 131, 134 (2022).  He later set out to use his "conceptual art" and NFTs to—in his own words—"troll the SEC" by sending the SEC staff requests for no-action letters (to which staff did not respond), in which he declared that he *was* conducting securities offerings.  *Id.* at 121-22, 125, 137.  Now he is suing the SEC, and wasting judicial and agency resources, seeking a declaration that contradicts the views he expressed in his no-action requests.

Regardless of Plaintiffs' intentions, they are asking the Court for an improper advisory opinion.  But "the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give" such "advisory opinions."  *Flast v. Cohen*, 392 U.S. 83, 95 (1968) (cleaned up).  Plaintiffs attempt to clothe their naked request for an advisory opinion in an assertion that they face a "credible threat of future enforcement" such that they are unwilling to proceed with their new Prospective Offerings until this Court greenlights the projects.  Plaintiffs, however, have alleged no facts showing that the Commission has taken any steps to investigate or bring an enforcement action against them.  There is no alleged injury in fact—imminent or otherwise.  Additionally, they concede that they have been offering and selling NFTs since 2018 and through the present.  And Plaintiffs make no effort to distinguish their future Prospective Offerings from their current NFT offerings.  Their willingness to offer and sell NFTs *today* highlights that the unsubstantiated "threat of enforcement" is not credible. After selling NFTs for six years, Plaintiffs cannot point to a single communication from the SEC or its staff about their NFT offerings and sales.

The Court should dismiss Plaintiffs' DJA suit for lack of subject-matter jurisdiction. First, sovereign immunity bars this action because enforcement actions are within the express

2

discretion of the Commission, and Plaintiffs have not identified any final agency action that would waive sovereign immunity under the Administrative Procedure Act ("APA").  Second, Article III standing and ripeness requirements preclude this Court from exercising jurisdiction consistent with the Constitution.

## BACKGROUND

### A.  Congress committed enforcement actions to the Commission's discretion.

Congress "established the Securities and Exchange Commission . . . to enforce federal securities laws." *Kokesh v. SEC*, 581 U.S. 455, 458 (2017).  The "agency's decision on whether to investigate is a matter committed to agency discretion by law." *Gentile v. SEC*, 974 F.3d 311, 319 (3d Cir. 2020); *see Gabelli v. SEC*, 568 U.S. 442, 451 (2013) ("[A] central mission of the Commission is to investigate potential violations of the federal securities laws.") (cleaned up). Following an investigation, the Commission may initiate an enforcement action in federal court by filing a complaint that asks the court to grant relief for a violation of the federal securities laws. *See, e.g.*, 15 U.S.C. §§ 77t(b), 78u(d) (authorizing enforcement actions).  As with investigations, Congress entrusted the decision of how to enforce the federal securities laws to the Commission's "absolute discretion."  *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 297 (2d Cir. 2014) ("The exclusive right to choose which charges to levy against a defendant rests with the S.E.C."); 15 U.S.C. §§ 77t(b), 78u(d) ("[T]he Commission may, in its discretion, bring an action in any district court[.]").

### B.  NFTs under the federal securities laws

Under the Securities Act of 1933 ("Securities Act"), every offer or sale of securities in the United States must be registered with the SEC or be exempt from registration.  *See* 15 U.S.C. § 77d, (e).  The term "security" includes, among other things, an "investment contract."  15

3

U.S.C. § 77b(a). As Plaintiffs recognize (Compl. ¶38), the Supreme Court's decision in *SEC v. W.J. Howey Co.* defined an "investment contract" under the Securities Act as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). Scores of cases have applied this definition, which the Fifth Circuit has articulated in a three-part test. *See In re Living Benefits Asset Mgmt., L.L.C.*, 916 F.3d 528, 535 (5th Cir. 2019) (test includes (i) an investment of money; (ii) in a common enterprise; and (iii) profits are derived from the efforts of others). *Howey* requires a fact-intensive analysis in which "form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967).

To date, three courts have applied *Howey* to the specific facts and circumstances of particular offerings and sales of NFTs. *See Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422, 430 (S.D.N.Y. 2023) (original complaint filed May 12, 2021); *Dufoe v. DraftKings Inc.*, 2024 WL 3278637, at *3 (D. Mass. July 2, 2024) (original complaint filed March 9, 2023); *Harper v. O'Neal*, 2024 WL 3845444 (S.D. Fla. Aug. 16, 2024) (original complaint filed May 23, 2023). All three cases involve private plaintiffs—not the Commission—alleging that the offer and sale of specific NFTs violated the federal securities laws. Indeed, at the time the three cases were filed, the SEC had never brought a case against any issuer of NFTs. In all three cases, the courts denied motions to dismiss based on specific allegations, holding that the plaintiffs had sufficiently pled that the defendants had offered and sold the NFTs as investment contracts, and thus, as securities. *Dapper Labs*, 657 F. Supp. 3d at 429, 450 (NFTs were NBA game video clips); *DraftKings Inc.*, 2024 WL 3278637, at *2, *10 (NFTs were images of pro athletes); *O'Neal*, 2024 WL 3845444, at *1, *11 (NFTs were virtual avatars).

4

These decisions recognize that there is no one-size-fits-all ruling for NFTs. As one court noted, "[n]ot all NFTs offered or sold by any company will constitute a security, and each scheme must be assessed on a case-by-case basis." *Dapper Labs*, 657 F. Supp. 3d at 450; *see also DraftKings*, 2024 WL 3278637, at *4 ("This Court need not decide whether any and all NFT transactions should be considered an investment contract."); *O'Neal*, 2024 WL 3845444, at *8 (declining to determine "whether an NFT is a per se investment contract").

### C. Plaintiffs have been selling NFTs for years with no alleged action by the Commission.

Plaintiffs allege that they create and sell "'non-fungible tokens' ('NFTs'), digital assets that can take the form of art, music, videos, and in-game items, among many other things." Compl. ¶¶5-6. Plaintiffs describe NFTs as "unique cryptographic tokens on a blockchain, that can be bought and sold with digital assets or fiat, and can give the owner a wide array of digital and/or physical rights that are built directly into the software code." *Id.* ¶6. Plaintiffs claim to be "well-known creators of NFTs." *Id.* ¶18. Plaintiff Jonathan Mann alleges he is a "singer and songwriter" who writes a new song every day and "currently sells each song as a Song A Day NFT via a 'bid-to-earn' auction." *Id.* ¶23. Plaintiffs allege that Mann's daily song creations "have been published as NFTs on the Ethereum blockchain" since 2018. *Id.*

Plaintiff Brian L. Frye is a law professor who claims he is "creating conceptual art in the medium of legal scholarship and selling it as NFTs." *Id.* ¶24. Indeed, Frye's "legal scholarship" on NFTs reveals that "NFTs kickstarted [his] career as a conceptual artist." Compl. ¶8; Frye, *How to Sell NFTs Without Really Trying*, *supra*, at 119. Frye has offered NFTs since at least 2019, and "each NFT collection [he releases] is typically accompanied by an essay, in which Frye explains his objectives for the project." *Id.* ¶¶8, 24 & n.2.

5

Plaintiffs do not allege the SEC has investigated them or taken any action against them for their years of offering and selling NFTs. Indeed, Plaintiffs do not allege that anyone in the SEC's Divisions of Corporation Finance and Enforcement has ever communicated with them.

**D. Frye's no-action letter requests to the Commission staff recognized his NFT offerings could be securities offerings.**

Plaintiffs' only claimed interaction with the Commission occurred when Frye submitted two letters to the Commission staff requesting the staff recommend that "no action" be taken against him for offerings he was then making. *Id.* ¶¶ 131, 133-34. Through an informal process, an individual may request a "no-action" letter from SEC staff when he "is not certain whether a particular product, service, or action would constitute a violation of the federal securities law." *No Action Letters*, U.S. Sec. & Exch. Comm'n, https://www.investor.gov/introduction-investing/investing-basics/glossary/no-action-letters (last visited Oct. 22, 2024). SEC staff are not required to respond to no-action requests, and the decision whether and how to do so is discretionary. *See id.* The no-action process is also prospective; an individual needs to submit a no-action request prior to engaging in the conduct about which they are inquiring. *See* U.S. Sec. & Exch. Comm'n, *SEC Docket*, Vol. 21, No. 5, Release No. 6253, at 320 n.2 (Nov. 11, 1980) (describing process) (available at https://www.sec.gov/files/rules/interp/33-6253.pdf).

The Complaint alleges Frye's first letter, dated January 1, 2020, did not relate to NFTs. Compl. ¶131. The Complaint further alleges that, in the first letter, Frye "propos[ed] to sell 50 editions of a conceptual art project to the public and request[ed] confirmation from the SEC that his proposal did not constitute the sale of an unregistered security." *Id.* Contrary to that characterization in the Complaint, in reality, Frye opined in his letter that his offering constituted a securities offering and that Commission staff *should not* issue a no-action letter. *See*

Declaration of Peter Bryan Moores ("Moores Decl."), <u>Ex. 1</u> at 1-2.[1]  He wrote:

> In my opinion, [the offering that Frye named] "SEC No-Action Letter Request" is **obviously a "security"** under the Securities Act of 1933 and the Howey test. SEC v. W.J. Howey Co., 328 U.S. 293 (1946) … Accordingly, **you should deny my request** for a no-action letter, because I am proposing to sell an unregistered security.

*Id.* (emphasis added).  SEC staff did not respond to Frye's letter.  Compl. ¶131.

On September 4, 2021, Frye submitted a second request for a no-action letter to the Commission staff.  Compl. ¶131.  The letter proposed selling a "work of conceptual art to the public in the form of 50 NFTs, each constituting 2% ownership in the conceptual artwork."  *Id.* In this letter, Frye refers to his January 2020 request and writes that his NFT offering was not materially different from the conceptual art project described in his January 2020 letter.  Moores Decl., <u>Ex. 2</u> at 2.  Frye concludes that because the SEC did not respond to the first letter or bring an enforcement action against him, he "assume[d] that the SEC has concluded that the sale of the work was not the sale of an unregistered security," and "assume[d]" the SEC would conclude the same about his latest unregistered NFT offering.  *Id.* at 3.  SEC staff did not respond to Frye's request.  Compl. ¶135.

### E. Despite their alleged fear of an SEC investigation, Plaintiffs have continued to create and sell NFTs and planned their Prospective Offerings.

Plaintiffs assert that, in addition to the NFTs they are already selling, they also have arranged for new Prospective Offerings, namely "imminent plans to sell their art . . . as larger-

---

[1] Frye's letters to the Commission staff are incorporated by reference into the Complaint and may be considered by the Court on a motion to dismiss.  *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004) ("A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").  Frye's letters are <u>Exs. 1 and 2</u>, attached to the Declaration of Peter Bryan Moores, filed herewith.

scale and widely-promoted limited edition NFTs." Compl. ¶¶10, 18. Specifically, Plaintiff

Mann "plans to release a limited edition of 10,420 NFTs . . . composed of his . . . song entitled

'This Song is a Security.'" *Id.* ¶122. Plaintiff Frye "intends to release a conceptual artwork

called Cryptographic Tokens of Material Financial Benefit in the form of 10,320 Cryptographic

Tokens of Material Financial Benefit NFTs." *Id.* ¶128. Plaintiffs allege that neither Plaintiff will

"register[] the offer and sale of his NFTs with the SEC" and the offerings would not "qualify for

any apparent exemptions under the securities laws." *Id.* ¶¶152, 154. Plaintiffs contend that their

Prospective Offerings of NFTs will not involve securities as defined by the Securities Act and,

more specifically, will not involve "investment contracts." *See id.* ¶¶14, 156.

Plaintiffs claim that, because of their Prospective Offerings, they have a "fear of an

investigation or enforcement action by the SEC" and thereby "suffer[] hardship." Compl. ¶¶10,

22, 127, 136. To support their claim of hardship, Plaintiffs point to two SEC enforcement

actions against issuers of NFTs from August 2023 and September 2023, respectively, and "the

SEC's overall approach to digital assets." *Id.* ¶¶85, 96, 145.[2]

Plaintiffs' alleged "fear" has not stopped them from offering and selling other NFTs. As

of at least July 29, 2024 (the date of the Complaint) and nearly a year after the Commission

announced charges against one of the NFT issuers referenced in Plaintiffs' Complaint, Mann was

offering and selling the songs that he writes and records each day "as a Song A Day NFT via a

'bid-to-earn' auction." *Id.* ¶23. Frye has not alleged in the Complaint that he has stopped

offering and selling NFTs. Tellingly, though they profess "fear" of enforcement relating to their

---

[2] On September 16, 2024, the SEC also issued a settled order against Flyfish Club, LLC for
conducting an unregistered securities offering involving NFTs that raised approximately $14.8
million from investors. *See In re Flyfish Club, LLC*, Securities Act Release No. 11305, 2024
WL 4203737 (Sept. 16, 2024).

Prospective Offerings, Plaintiffs allege no meaningful distinction between the NFTs they have continued offering and selling and their Prospective Offerings. Nonetheless, Plaintiffs bring this lawsuit claiming they have suffered harm.

### F. Plaintiffs' Declaratory Judgment Action

Plaintiffs filed suit seeking "a declaratory judgment that their proposed NFT projects do not violate U.S. securities laws." Compl. ¶19. They invoke the DJA, 28 U.S.C. § 2201, based on a supposed "genuine threat" of an SEC enforcement action against them. *Id.* ¶¶150-51. But the Complaint does not allege that the Commission has threatened to bring an enforcement action against Plaintiffs or that the Commission has engaged in any conduct related to Plaintiffs—no correspondence, no calls with staff, and no investigation. Rather, the Complaint bases this supposed "genuine threat" on "the SEC's history of bringing enforcement actions" against "issuers of NFTs" for "similar conduct." *Id.* ¶¶151, 153.

Plaintiffs seek declaratory and injunctive relief. They ask this Court to declare that they "would not violate Sections 5(a) or 5(c) of the Securities Act by executing" their Prospective Offerings. Compl. ¶163. They also ask this Court to "[e]njoin the SEC from bringing an enforcement action against" them "premised on their failure to register [their Prospective Offerings] with the SEC." *Id.*

### STANDARD OF REVIEW

The SEC moves to dismiss for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Plaintiffs bear "[t]he burden of establishing federal jurisdiction." *Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*, 53 F.4th 361, 364 (5th Cir. 2022) (cleaned up). "[A]t the Rule 12(b)(1) stage of the proceedings, the plaintiffs' burden is to allege

a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d

649, 652 (5th Cir. 2012).  A complaint's factual allegations—but not its legal conclusions—are

accepted as true.  *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020).

## ARGUMENT

Two independent jurisdictional defects prove fatal to this lawsuit: there has been no

waiver of the SEC's sovereign immunity, and the Complaint fails to present a case or

controversy under Article III of the Constitution.

### I.    This Court lacks jurisdiction because sovereign immunity bars this lawsuit.

"[T]he United States may not be sued except to the extent that it has consented to suit by

statute," and, where there is no consent or waiver, "the court lacks jurisdiction."  *Alabama-*

*Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (cleaned up); *accord*

*FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the

Federal Government and its agencies from suit.").  Plaintiffs fail to carry their burden of showing

"Congress's unequivocal waiver of sovereign immunity."  *St. Tammany Par. ex rel. Davis v.*

*FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

The Complaint asserts a cause of action under the Declaratory Judgment Act ("DJA")

and argues that the Court has subject-matter jurisdiction under 28 U.S.C. § 1331.  Compl. ¶20.

But the DJA neither extends federal court jurisdiction nor provides an independent cause of

action with any attendant waiver of sovereign immunity.  *See Skelly Oil Co. v. Phillips*

*Petroleum Co.*, 339 U.S. 667, 671 (1950) (describing DJA as "procedural only" because it

"enlarged the range of remedies available in the federal courts but did not extend their

jurisdiction") (cleaned up); *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir.

2001) (holding that DJA does not provide independent cause of action).  And 28 U.S.C. § 1331

"alone does not provide jurisdiction for agency actions unless a statute, such as the APA, has waived sovereign immunity." *Elldakli v. Garland*, 64 F.4th 666, 670 (5th Cir. 2023).

The Complaint, however, does not describe any Constitutional right or any statutory or common law claim under which Plaintiffs are proceeding. Rather, it appears that Plaintiffs may be asserting their claim under the general provisions of the APA (5 U.S.C. § 551 *et seq*.), which can provide a vehicle for claims against federal agencies when no other statutory process exists. *See* Compl. ¶161 (briefly referencing the APA); *see also* 5 U.S.C. § 704; *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 372 (7th Cir. 1983) ("The jurisdiction of the federal courts to review administrative action is codified in the Administrative Procedure Act."). Any reliance upon the APA and its waiver of sovereign immunity, however, is fatally flawed.

First, the APA's waiver of sovereign immunity is not available if the challenged "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). While there is no alleged "agency action" here, Plaintiffs are explicitly challenging the Commission's future prosecutorial decisions, and Congress has expressly committed such decisions to the Commission's discretion. Thus, they are not reviewable under the APA. Second, Plaintiffs fail to meet the requirements for a waiver of sovereign immunity for claims brought under the general provisions of the APA. The APA waives immunity for such claims where a person suffers a "legal wrong" because of "final agency action." *Alabama-Coushatta*, 757 F.3d at 489 (citing 5 U.S.C. §§ 702, 704); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final

11

agency action.'").[3]  Plaintiffs have not plead any relevant agency action, much less one that is

final or caused *them* legal wrong.  *Alabama-Coushatta*, 757 F.3d at 489.

### A.  Plaintiffs challenge matters committed by law to agency discretion.

For the APA to apply, Plaintiffs must meet the threshold requirement of Section 701.

*Heckler*, 470 U.S. at 829 ("[B]efore any review at all may be had [under the APA], a party must

first clear the hurdle of § 701(a).").  But they have failed to do so.  The APA (and its waiver of

sovereign immunity) does not apply if the challenged agency action is "committed to agency

discretion."  5 U.S.C. § 701(a)(2) ("This chapter applies, according to the provisions thereof,

except to the extent that . . . agency action is committed to agency discretion by law."); *Webster

v. Doe*, 486 U.S. 592, 597 (1988) ("[J]udicial review under § 702 . . . is predicated on satisfying

the requirements of § 701 . . . .").  Although the Complaint includes no allegations that any

investigation or enforcement action has been planned, threatened, or commenced, Plaintiffs

claim that the relevant "agency action" here is the possibility of an enforcement action in the

future, asking this Court to enjoin the Commission from bringing such an enforcement action.

*See, e.g.*, Compl. ¶162.

The problem for Plaintiffs, however, is that decisions to investigate and to bring

enforcement actions are expressly committed to the Commission's discretion by law.  *See, e.g.*,

15 U.S.C. § 77t(a)-(b) (under Securities Act, Commission "may, in its discretion" investigate

securities law violations and "bring an action in any district court . . . to enjoin such acts"); 15

---

[3] If Plaintiffs amend their Complaint to allege a claim other than one under the general
provisions of the APA, they would still need to satisfy Section 702.  Section 702 of the APA
grants a waiver of sovereign immunity only for actions brought by "person[s] suffering legal
wrong because of agency action, or adversely affected or aggrieved by agency action within the
meaning of a relevant statute."  5 U.S.C. § 702.  Regardless, Plaintiffs cannot assert any legal
wrong they have suffered as a result of an agency action and would not be entitled to a waiver.

U.S.C. § 78u(a), (d) (same, under Securities Exchange Act of 1934).  Indeed, such "exercise of

prosecutorial discretion" is the paradigmatic example of agency action committed to agency

discretion by law.  *Heckler*, 470 U.S. at 828-34 (cleaned up); *Kokesh*, 581 U.S. at 458

("Congress vested the Commission with broad authority to conduct investigations into possible

violations of the federal securities laws."); *Gentile*, 974 F.3d at 319 (holding that the

Commission's "decision on whether to investigate is a matter committed to agency discretion by

law").  Because the decisions whether to investigate and whether to bring enforcement actions

are committed to the Commission's discretion by law, Section 702's waiver of sovereign

immunity is inapplicable and this Court lacks jurisdiction.

**B.  Plaintiffs do not identify any final agency action affecting them in a specific way that has caused them a legal wrong.**

Plaintiffs also fail to establish the "two separate requirements for establishing a waiver of

sovereign immunity" for claims brought pursuant to the general provisions of the APA.

*Alabama-Coushatta*, 757 F.3d at 489; *see* 5 U.S.C. §§ 702, 704.  Plaintiffs must: (i) identify

some final agency action affecting them in a "specific way," and (ii) show that they "suffered

legal wrong because of the challenged agency action."  *Id*.  Their Complaint does neither.

***No agency action affecting Plaintiffs.***  Congress defined "agency action" for the APA as

an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to

act."  5 U.S.C. §§ 551(13), 701(b)(2); *see also Louisiana v. United States*, 948 F.3d 317, 321 (5th

Cir. 2020) (stating that "the term 'action' as used in the APA . . . does not include all conduct"

and "agency action being challenged must be 'circumscribed and discrete'") (cleaned up).

Plaintiffs do not identify any act affecting them that is included in the definition of

"agency action," such as a Commission "rule," "license," "sanction," or "relief."  *See* 5 U.S.C.

13

§ 551(4), (8), (10)-(11) (defining those terms for APA purposes); *see also Walmart, Inc. v. DOJ*, 21 F.4th 300, 308-11 (5th Cir. 2021) (discussing meaning of "rule" and "sanction"). They do not allege that the Commission has adopted a "rule" that aggrieves them, engaged in an "adjudication"—the "agency process for the formulation of an order," 5 U.S.C. § 551(7)— regarding Plaintiffs, or entered an "order" making a final disposition against the Plaintiffs. *See* 5 U.S.C. § 551(6) ("'[O]rder' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form.").

Instead, Plaintiffs claim an "agency action" based on a generalized inchoate "threat" of an "enforcement suit." *See, e.g.*, Compl. ¶155. Plaintiffs, however, do not allege any basis for that supposed threat or claim that the Commission has threatened them. And even where there is an express threat of future enforcement (not present here), the Fifth Circuit has held that it does not qualify as agency action for purposes of Section 702. *Walmart*, 21 F.4th at 310-11. Rather than identify any threat directed towards them, Plaintiffs base their suit on "the SEC's history of bringing enforcement actions against Impact Theory and SC2 for similar conduct (each of which constituted a final action)." Compl. ¶¶153, 155. But administrative orders issued by the Commission against other entities do not constitute agency action *against Plaintiffs* because they do not "affect[] [Plaintiffs] in a specific way," as is required to invoke Section 702's sovereign-immunity waiver. *Alabama-Coushatta*, 757 F.3d at 489 (agency action must be "factually developed by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him") (cleaned up). Similarly, while the Plaintiffs cite the SEC's "overall approach to digital assets" as purportedly manifested in the filing of complaints against other entities, *see* Compl. ¶¶57, 59, 61, 145, such an approach does not affect Plaintiffs in a specific way. *Glenewinkel v. Carvajal*, 2022 WL 179599, at *5 (N.D. Tex. Jan.

14

20, 2022) (an agency's "broad policies and practices [] cannot serve as the basis for APA review"); *see also Rowan Ct. Subdivision 2013 Ltd. P'ship v. La. Hous. Corp.*, 2017 WL 4018859, at *8 (M.D. La. Sept. 12, 2017) (finding action constituted impermissible programmatic challenge though plaintiffs "identified some specific agency actions" to contest "the way [the agency] administers the program at issue").  Under Plaintiffs' theory, a lawsuit by an agency against one party waives the sovereign immunity of the United States as to any action by all third parties who may claim they are similar to the defendant.  Such an exception would swallow the rule.

Moreover, Plaintiffs also fail to allege agency action that is final.  Because, at most, Plaintiffs seek judicial review "pursuant only to the general provisions of the APA . . . [t]here must be 'final agency action'" for this Court to exercise jurisdiction.  *Alabama-Coushatta*, 757 F.3d at 489.  "Final agency actions are actions which (1) 'mark the consummation of the agency's decisionmaking process,' and (2) 'by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (en banc) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)).  Plaintiffs point to no SEC decisionmaking about *their* NFT projects, let alone a consummation of that process.  Indeed, Plaintiffs concede there was no "final agency action" in connection with Frye's no-action letter request.  *See* Compl. ¶135.  And even if Plaintiffs were to allege that the Commission is investigating Plaintiffs, which they have not, the Fifth Circuit has held that "[a]n agency's initiation of an investigation does not constitute final agency action." *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).

***No legal wrong suffered because of SEC action.***  Even assuming that the Complaint sufficiently alleges final agency action, Plaintiffs fail to meet the second requirement for waiving

sovereign immunity—they cannot show that they "suffered legal wrong" on account of that agency action. *Walmart*, 21 F.4th at 308; *Alabama-Coushatta*, 757 F.3d at 489. As noted, Plaintiffs have identified no SEC guidance, rules, orders, or other action that apply to them specifically. While Plaintiffs point to actions against other parties, Plaintiffs do not identify the "legal wrong" that those enforcement actions caused them, and the cease-and-desist orders entered *against other parties* impose no consequences or obligations on Plaintiffs. *See In re Impact Theory, LLC*, Securities Act Release No. 11226, 2023 WL 5530012 (Aug. 28, 2023); *In re Stoner Cats 2, LLC*, Securities Act Release No. 11233, 2023 WL 5956272 (Sept. 13, 2023).

## II.    Plaintiffs' Complaint does not present a justiciable case or controversy.

Furthermore, Article III's "Cases" and "Controversies" limitation on a federal court's jurisdiction defeats subject-matter jurisdiction in this case. U.S. Const. art. III, § 2. In interpreting Article III, "courts have developed justiciability doctrines, such as the standing and ripeness doctrines." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam). Though the doctrines often overlap in practice, standing is concerned with whether a proper party is bringing suit, while ripeness is concerned with "whether the suit is being brought at the proper time." *Rush v. Barham*, 618 F. App'x 789, 792 (5th Cir. 2015) (cleaned up). "[S]tanding and ripeness are essential components of federal subject-matter jurisdiction . . . ." *Sample*, 406 F.3d at 312. To adequately plead subject-matter jurisdiction, plaintiffs must allege facts demonstrating both standing and ripeness. *See, e.g.*, *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133-34 (5th Cir. 2009). Plaintiffs have not done so here, and instead are merely seeking an advisory opinion from the Court.

### A.  Plaintiffs lack standing.

"To establish standing, . . . a plaintiff must demonstrate (i) that she has suffered or likely

16

will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the

defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).  Because Plaintiffs fail to plead a

concrete and imminent injury, they cannot establish the first prong and, thus, lack standing.

To have standing, plaintiffs must demonstrate an injury in fact that is "concrete,

particularized, and actual or imminent; fairly traceable to the challenged action; and redressable

by a favorable ruling."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

An injury in fact cannot be "conjectural or hypothetical."  *Nat'l Press Photographers Ass'n v.

McCraw*, 90 F.4th 770, 781-82 (5th Cir. 2024) (finding no imminent or credible threat of

enforcement where defendants had not enforced statutory provision against plaintiffs).  "[T]o

ensure that the alleged injury is not too speculative for Article III purposes [a] threatened injury

must be certainly impending to constitute injury in fact"; "allegations of possible future injury

are not sufficient."  *Clapper*, 568 U.S. at 409 (cleaned up); *see also Hodl L., PLLC v. SEC*, 2024

WL 3898607, at *2 (9th Cir. Aug. 22, 2024) (no subject matter jurisdiction where threat of SEC

enforcement against plaintiff was not reasonable or imminent).

Here, Plaintiffs have not pled an actual or imminent injury in fact.  Plaintiffs raise two

types of putative injuries in their Complaint: (i) the possibility of an expensive future

enforcement action or litigation; and (ii) the hardship suffered by Plaintiffs by not offering the

Prospective Offerings.  Neither of these supposed, hypothetical hardships shows an injury in fact.

First, Plaintiffs stake their standing on possible exposure to civil liability.  Compl. ¶160

(alleging "credible threat of enforcement" by SEC "illustrates Plaintiffs' standing to bring this

action").  Plaintiffs, however, have failed to allege any facts suggesting an investigation or

enforcement action against Plaintiffs is even contemplated, let alone imminent.  Indeed,

17

Plaintiffs appear to have offered and sold NFTs since 2018, and they do not allege that they have been the subject of any investigative actions or even communications from Commission staff. Any alleged harm here is wholly speculative. *See G.K. v. D.M.*, 2022 WL 19403388, at *4 (E.D. La. July 22, 2022) (finding threat of liability too speculative and hypothetical where no action pending against plaintiff and where plaintiff did not establish statute applies).

Moreover, this case differs from pre-enforcement challenges in which a court found an imminent injury in fact. Plaintiffs here do not challenge the validity or constitutionality of a statute or agency rule. *Compare Book People, Inc. v. Wong*, 91 F.4th 318, 328-29 (5th Cir. 2024) (injury alleged in pre-enforcement First Amendment challenge to state statute by pleading, in part, that the statute proscribed their conduct and there was a substantial threat of future enforcement). Rather, Plaintiffs here challenge only the Commission's choice to enforce the Securities Act against other parties, which is not an injury to them. *See, e.g.*, *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 318-19 (5th Cir. 2002) (finding an injury in fact must be "personal" and that for standing plaintiffs must show that "defendant violated a legal duty owed to them"). Thus, Plaintiffs do not allege an injury in fact from living under an invalid statute specifically applicable to them. Indeed, having to sell their NFTs in compliance with valid laws does not create a cognizable injury in fact. Nor would an injury arise if Plaintiffs chose to violate a *valid* law, in this case Section 5 of the Securities Act. "[S]tanding cannot be conferred by a self-inflicted injury." *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018).

Even if an investigation or enforcement action were foreseeable—and Plaintiffs' allegations do not come close to establishing that—it would not be sufficient for Plaintiffs to establish a concrete injury. "[M]erely foreseeable future litigation resulting from a statutory interpretation that an agency has adopted in an adjudication is . . . without more . . . too

speculative to satisfy Article III's injury-in-fact requirement," as opposed to when "the prospect of impending harm [is] effectively certain." *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1313-14 (D.C. Cir. 2010). Nor is the expense of an investigation or enforcement action an injury in fact sufficient to establish standing. "[T]ime and again, the Supreme Court and [the Fifth Circuit] have said that mere 'expense and annoyance' inflicted by agency proceedings does not aggrieve a party." *Gulfport Energy Corp. v. FERC*, 41 F.4th 667, 677 (5th Cir. 2022).

Second, Plaintiffs allege that they are suffering hardship from not proceeding with the Prospective Offerings for fear of the "SEC launching an investigation or initiating litigation." Compl. ¶¶127, 136. But this claimed injury is at best, hypothetical, and at worst, disingenuous. Either way, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Plaintiffs have been selling NFTs for years—Mann since 2018—without pause. *See* Compl. ¶8 (Plaintiff Mann has been publishing his songs "as NFTs on the Ethereum blockchain" since 2018). In fact, Mann pleads that he creates a new NFT every day and sells it at auction. *Id.* ¶23. While not pleading specific current offerings, Frye has not alleged he has stopped offering all NFTs he has created. Their supposed fear of enforcement—even if not speculative—has not actually caused them to refrain from offering NFTs.

The Fifth Circuit's decision in *Braidwood Mgmt., Inc. v. EEOC*, which is the decision on appeal of the case cited in the Complaint, *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571 (N.D. Tex. 2021) (Compl. ¶159), is not to the contrary. *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023). There, the Fifth Circuit affirmed the district court's findings that formal EEOC guidance about Title VII and an enforcement action against a third party were sufficient to confer standing and ripeness. *Id.* at 923. But this matter differs from *Braidwood* in

two key respects.  In *Braidwood*, "[n]o party dispute[d] that under current EEOC guidance, neither [plaintiff] can fire any employee for nonconformance with the [plaintiff's] challenged religious beliefs."  70 F.4th at 931.  But Plaintiffs do not rely on any applicable agency guidance; to the contrary, they allege that the SEC has not provided any guidance on NFTs.  *See, e.g.*, Compl. ¶56 ("[T]he SEC has provided no constructive guidance."); Compl. ¶83 ("The Commission has never engaged in rulemaking to adopt or explain the SEC's view that it has jurisdiction over NFTS . . . or to address which NFT transactions involve the offer and sale of a security.").  Additionally, in *Braidwood*, a credible prosecution risk existed because the plaintiffs "admit[ted] they [were] breaking EEOC guidance, which the EEOC [did] not seriously contest." *Braidwood*, 70 F.4th at 926.  Here, Plaintiffs face no credible prosecution risk.  Without a clear violation of any applicable Commission guidance, the supposed injury is not "certainly impending."  *See id*. at 932 (cleaned up).[4]

Plaintiffs present only a hypothetical concern that the SEC may one day investigate them for activity Plaintiffs have conducted for years without any SEC response.  Without an actual or imminent injury, Plaintiffs do not have standing to bring this case.  While Plaintiffs may be curious how their offerings intersect with Section 5 of the Securities Act, they have no standing to seek an advisory opinion from this Court.

---

[4] Because the EEOC did "not pursu[e] the sovereign-immunity defense on appeal," the Fifth Circuit in *Braidwood* did not address whether the EEOC had waived sovereign immunity. *Braidwood*, 70 F.4th at 921 n.5.  The Northern District of Texas did find that the EEOC had waived sovereign immunity.  But, again, the circumstances in *Bear Creek* are different from those here.  Because the *Bear Creek* plaintiffs asserted "causes of action that arise outside of the APA," they were not required to show "final agency action" and the court there did not address the issue of whether the actions at issue constituted such final agency action.  *Bear Creek*, 571 F. Supp. 3d at 599 (cleaned up).  By contrast, here Plaintiffs must "establish 'final agency action' for the Section 702 waiver to apply" and have failed to do so.  *Id*.; *see supra* at 13-15.

### B. Plaintiffs' claim is not ripe.

Plaintiffs also fail to show that their claim is ripe.  The issues they present to the Court

are not ready for the Court's attention.  "A declaratory judgment action, like any other action,

must be ripe in order to be justiciable," *TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d

325, 332 (5th Cir. 2017) (cleaned up), and it "is ripe . . . only where an actual controversy

exists," meaning that "a substantial controversy of sufficient immediacy and reality exists

between parties having adverse legal interests," *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896

(5th Cir. 2000) (cleaned up).  "[T]he ripeness requirement is designed to prevent the courts,

through avoidance of premature adjudication, from entangling themselves in abstract

disagreements."  *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (cleaned up).

"Ripeness is a twofold inquiry that requires courts to evaluate both the fitness of the issues for

judicial decision and the hardship to the parties of withholding court consideration." *Walmart*, 21

F.4th at 311 (cleaned up).  Here, the issues presented are unfit for judicial decision, and the

cognizable hardship to Plaintiffs, if any, does not justify judicial intervention.

***Issues are not fit for judicial decision.***  Courts use multiple factors to decide whether

issues presented in a pre-enforcement action are fit for a judicial decision, including: (i) "whether

the agency's action is sufficiently final"; (ii) "the likelihood that threatened litigation will occur";

(iii) "whether [judicial review] of [the] issue[s] would benefit from a more concrete setting"; and

(iv) "whether the issue[s] presented [are] purely legal one[s]."  *Walmart*, 21 F.4th at 311 (cleaned

up).  While "[f]ailure on even one of [these] prongs can render a case unfit for judicial review,"

*id.*, here, all of the considerations demonstrate a lack of fitness for review.

First, Plaintiffs' request for judicial intervention is premature because the Commission

has taken *no* action regarding Plaintiffs.  Where a lawsuit challenges agency action that is not

sufficiently final, "[j]udicial review . . . improperly intrudes into the agency's decisionmaking process" and "squanders judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986). Again, the Commission has not taken *any* action with respect to Plaintiffs, much less "provided its final word on the matter short of an enforcement action." *Id*. at 437 (cleaned up). Thus, judicial review would occur before the SEC's fact-gathering and decisionmaking even began, thereby wasting judicial and agency resources. *Id.* (judicial review should not "disrupt the orderly process of administrative decisionmaking"); *see, e.g.*, *Hodl L., PLLC v. SEC*, 2023 WL 4852322, at *4 (S.D. Cal. July 28, 2023) (holding that digital-asset-related declaratory judgment claims were not ripe because the Commission had not brought suit against plaintiff); *Consensys Software, Inc. v. SEC*, 2024 WL 4438969, at *4 (N.D. Tex. Sept. 19, 2024) (holding that digital-asset-related declaratory judgment claim did not satisfy first ripeness prong because "an SEC enforcement action against another cryptocurrency trading platform, the Wells Notice [concerning a possible SEC enforcement action], and [the Commission's] enforcement action against Plaintiff" did not constitute final agency action).

Second, a potential future SEC enforcement action rests on too many speculative contingencies. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (cleaned up). Plaintiffs' allegations center on future hypothetical conduct, namely whether the Plaintiffs will launch their projects and whether the SEC, with its limited resources, broad mission, multiple priorities, and prosecutorial discretion, will initiate an investigation and ultimately exercise its discretion to bring an enforcement action against the Plaintiffs. Simply put, Plaintiffs cannot show that a Commission action against them "is

sufficiently likely to happen to justify judicial intervention." *Orix*, 212 F.3d at 897 (cleaned up).

Third, Plaintiffs' claim is not ripe because they seek relief that would require this Court to opine on unknown future circumstances. "Courts customarily deal in specific facts or circumstances drawn with some precision and legal questions trimmed to fit those facts or circumstances; they are not in the business of deciding the general without reference to the specific." *Am. Fed'n of Gov't Emps. v. O'Connor*, 747 F.2d 748, 755-56 (D.C. Cir. 1984). Thus, reflecting both "Article III limitations on judicial power" and "prudential reasons for refusing to exercise jurisdiction," "[a] case becomes ripe when it would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (cleaned up). Plaintiffs have only provided limited information about the Prospective Offerings in the Complaint and have yet to commence them. And Plaintiffs do not allege that the Commission has taken a position regarding whether any of Plaintiffs' past or "prospective" sales of NFTs constitute an unregistered sale of securities. *See Walmart*, 21 F.4th at 312 (noting "the importance [for ripeness] of an unequivocally expressed position by the government" with respect to the specific actions at issue). Whether Plaintiffs' potential future offerings constitute securities offerings cannot be determined in the abstract. Rather, as Plaintiffs acknowledge, *see* Compl. ¶¶36-41, a court must apply the fact-based, case-by-case analysis dictated by the Supreme Court in *SEC v. W.J. Howey Co.*, to determine whether a financial instrument is offered and sold as an "investment contract" and thus a security, *Howey*, 328 U.S. at 298-99.

Fourth, as highlighted by *Howey* and its progeny, the judicial determination of whether an individual offered and sold investment contracts rests on the specific facts, representations,

and economic reality of an offering.  *See, e.g.*, *Williamson v. Tucker*, 645 F.2d 404, 427 (5th Cir. 1981) ("We have followed…a case by case approach" to deciding whether offerings satisfy definition of "security"); *Dapper Labs*, 657 F. Supp. 3d at 430 ("case-by-case basis"); *Sanderson v. H.I.G. P-XI Holding, Inc.*, 2000 WL 1042813, at *8 (E.D. La. July 27, 2000) ("investment contract" determined on "a case-by-case basis").  This judicial analysis is not well-suited for an undeveloped hypothetical because the legal analysis can materially and immediately change if the actual facts change.  A declaratory judgment by this Court that Plaintiffs' Prospective Offerings comply with the securities laws would be fact-bound and limited to the specific hypothetical facts presented to the Court, so it would not control if Plaintiffs made changes in how they offered their NFTs to prospective buyers.

At bottom, Plaintiffs seek an improper advisory opinion about how the securities laws apply to planned NFT offerings in the absence of any pending or imminent enforcement activity. This Court should not "adjudicat[e] whether federal law would allow an enforcement action" when that "require[s] . . . determin[ing] the legality of . . . hypothetical situations," particularly with respect to "a fuzzily defined range of enforcement actions that do not appear imminent." *Google, Inc. v. Hood*, 822 F.3d 212, 227 (5th Cir. 2016) (cleaned up).  Judicial power may not be invoked to "gain a litigation advantage by obtaining an advance ruling" on discrete legal issues. *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 246 (1952) ("[W]hen the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief should be granted.").

***No hardship to Plaintiffs from withholding court consideration.***  Plaintiffs will suffer no cognizable harm if this Court declines to provide an advisory opinion approving Plaintiffs'

prospective NFT projects.  As discussed *supra*, Plaintiffs face no credible prosecution risk.  The ripeness inquiry for an injury that is predicated on threat of litigation "focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Orix*, 212 F.3d at 895 (cleaned up).  Further, the orders against other entities upon which Plaintiffs rely do not "create adverse effects of a strictly legal kind" for Plaintiffs, which are "required for a showing of hardship," or affect Plaintiffs' "primary conduct."  *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 809-10 (2003) (cleaned up).  Moreover, as the Fifth Circuit has held, ripeness principles preclude a hypothetical defendant from bringing a DJA action to stop that future lawsuit when the hypothetical defendant "has the ability to test the government's regulatory position in court by raising its theories as defenses" in an enforcement action. *Walmart*, 21 F.4th at 313.  In the event the Commission decides to investigate Plaintiffs' offerings and Plaintiffs are ultimately charged with violations of the federal securities laws, they can challenge the Commission's theories then, "when harm is more imminent and more certain." *Ohio Forestry*, 523 U.S. at 734; *see also, e.g.*, *AT&T Corp. v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003) ("[T]he burden of participating in further administrative and judicial proceedings does not constitute sufficient hardship to overcome the agency's challenge to ripeness.").

## **CONCLUSION**

For the foregoing reasons, the SEC respectfully requests that the Court grant the SEC's motion to dismiss.  Furthermore, should Plaintiffs seek leave to amend their Complaint, the Court should deny such a request as any amendment would be futile.

Dated:  October 28, 2024

Respectfully submitted,

*/s/ Peter Bryan Moores*
Peter Bryan Moores (Mass. BBO No. 658033)
Alexandra Verdi (NY Reg. No. 5480934)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
(617) 573-8900 (Main)
(617) 573-4590 (Facsimile)
(617) 573-4576 (Moores)
mooresp@sec.gov (Moores)

*Attorneys for defendants U.S. Securities and Exchange Commission, Eric I. Bustillo, Gary Gensler, Caroline A. Crenshaw, Jaime E. Lizárraga, Hester M. Peirce, and Mark T. Uyeda*