UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JONATHAN MANN, et al.　　　　　　　　　　CIVIL ACTION

VERSUS　　　　　　　　　　　　　　　　　　NO: 24-1881

SECURITIES AND EXCHANGE　　　　　　　　SECTION: T (4)
COMMISSION, et al.

## ORDER AND REASONS

Before the Court is the Securities and Exchange Commission's (SEC) Motion to Dismiss for Lack of Jurisdiction. R. Doc. 18. For the following reasons, the motion is **GRANTED**.

## BACKGROUND

This case asks whether Plaintiffs can manufacture a justiciable pre-enforcement action to determine whether their non-fungible tokens (NFTs) are an "investment contract" under the Securities Act of 1933, 15 U.S.C. § 77a *et. seq*. (the "Securities Act"). Because the Court finds Plaintiffs do not identify a final agency action and the issue is not fit for judicial decision, the SEC is entitled to sovereign immunity, the case is not ripe, and the Complaint must be dismissed.

1. **Factual Summary**[1]

Plaintiffs, Jonathan Mann and Brian L. Frye, want to sell their digital art to troll the SEC. R. Doc. 1 at ¶¶ 5-9. They wish to do so via electronic, non-fungible digital assets recorded on a blockchain, NFTs. *Id.* at ¶¶ 6-7, 69. NFTs, short for "non-fungible tokens," encompass a wide

---

[1] A Rule 12(b)(1) motion to dismiss is treated like motions to dismiss under Rule 12(b)(6) but allows the Court to consider a broader range of materials. *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 676 (E.D. La. 2012) (citing *Williams v. Wynne*, 533 F.3d 360, 364–65 n. 2 (5th Cir. 2008)). The Court assumes Plaintiff's well-pleaded factual allegations in the Complaint as true. *Daniel v. Univ. of Texas Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020).

1

range of digital tokens that can take the form of art, music, videos, and collectables. But unlike fungible digital assets like cryptocurrencies, which are identical and interchangeable, NFTs are uniquely identifiable and irreplaceable. *Id.* at ¶ 71. NFTs provide the owner with a wide array of rights, including an exclusive right to ownership which can be transferable by the owner to the buyer. *Id.* at ¶ 74.

Plaintiffs have been selling NFTs since 2018. *Id.* at ¶¶ 8, 23. Plaintiff Mann creates a new song every day and sells it online via a "bid-to-earn" auction. R. Doc. 1 at ¶ 24. Mann now plans to release 10,420 NFTs priced at $800 that contain remixes of his song "This Song Is A Security" (the "Mann Project"). *Id.* at ¶ 122. He released the song in 2023. Mann alleges that he has taken "substantial steps" to prepare the Mann Project, including writing the song, hiring a visual artist, and preparing a publicity campaign. *Id.* at ¶ 127.

Plaintiff Frye is a law professor and digital artist. *Id.* at ¶ 8. He has been selling NFTs that parody the SEC by releasing a token titled "SEC No-Action Letter Request." *Id*. He now plans to sell 10,420 cryptographic tokens of the drawing for $80 per token (the "Frye Project").[2] The token itself is the proposed no-action letter. With each token, Frye plans to charge a 5% resale royalty on each sale. *Id.* at ¶¶ 128-130. Frye alleges he has taken substantial steps to prepare for the release of the Frye Project, including designing the artwork, creating the LLC, and preparing a publicity campaign. *Id.* at ¶ 130.

---

[2] The SEC has noted that Plaintiff Frye has "in his own words" stated that his art is used to "troll the SEC." R. Doc. 18-1 at p. 9. The same can be said about the Mann Project. The song's lyrics contain explicit references to then-SEC Chairman Gary Gensler and the SEC's enforcement action against other NFTs. See R. Doc. 1 at ¶ 122 (citing https://www.youtube.com/watch?v=h_4PCCt8kuo ("This song is a security, I better register with the SEC") and ("because it's so confusing [Gary,] I don't know what you're doing is it power you're abusing for kicks?"))

2

On January 1, 2020, and September 4, 2021, Plaintiff Frye submitted two no-action letter requests to the SEC. R. Doc. 1 at ¶ 130. In a no-action letter request, a proponent details their proposed project and requests that the agency issue a no-action letter indicating that the agency will not enforce or regulate the project. *See, e.g.*, *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 634 (5th Cir. 2023). In his first no-action request letter, Frye instead asked the SEC to "deny [his] request for a no-action letter, because I [Frye] am proposing to sell an unregistered security." R. Doc. 18-3 at p. 2.[3] The SEC did not respond.

Frye followed up. In his second letter to the SEC, he wrote that he "assume[d] that the SEC has concluded that the sale of the work was not the sale of an unregistered security" and maintained that his NFT project was lawful. R. Doc. 18-4 at ¶ 3. That letter also described a near identical project to the current Frye Project. The SEC did not respond to Frye's second letter. Frye suggests these no-action request letters indicate that he sought prior clarification that his project was not an unregistered security. R. Doc. 1 at ¶ 131.

The SEC has not taken any direct action against Plaintiffs. But they have pursued enforcement actions against other NFT sellers. Plaintiffs point to the SEC's commencement of enforcement actions against Impact Theory, LLC ("Impact Theory"), Stoner Cats 2, LLC ("Stoner Cats"), and Flyfish Club, LLC ("Flyfish") for violations of the Securities Act for offering and selling unregistered NFTs as "investment contract securities" (collectively "the Enforcement Actions"). R. Doc. 1 at ¶¶ 10-12, 68, 84-104; *In re Flyfish Club, LLC*, Securities Act Release No. 11305, 2024 WL 4203737 (Sept. 16, 2024); *In re Impact Theory, LLC*, Securities Act Release No.

---

[3] Frye's first no-action letter request concerned a near identical proposal to the current Frye Project—a request that he sell multiple editions of the same conceptual art titled "SEC No-Action Letter Request." R. Doc. 18-3.

3

11226, 2023 WL 5530012 (Aug. 28, 2023); *In re Stoner Cats 2, LLC*, Securities Act Release No. 11233, 2023 WL 5956272 (Sept. 13, 2023). In the Enforcement Actions, the SEC issued cease-and-desist orders (the "Cease-And-Desist Orders"). *Id.*

To date, three district courts have considered whether a particular NFT offering constitutes a security under the governing test set forth in *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946). *Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422, 430 (S.D.N.Y. 2023) (original complaint filed May 12, 2021); *Dufoe v. DraftKings Inc.*, 2024 WL 3278637, at *3 (D. Mass. July 2, 2024) (original complaint filed March 9, 2023); *Harper v. O'Neal*, 2024 WL 3845444 (S.D. Fla. Aug. 16, 2024) (original complaint filed May 23, 2023). However, each case involved private parties, not the SEC, who alleged NFT sales violated Section 5(a) of the Securities Act because they were unregistered. *Dapper Labs*, 657 F. Supp. 3d at 450 (NBA game video clips); *DraftKings Inc.*, 2024 WL 3278637, at *2, *10 (pro athlete images); *O'Neal*, 2024 WL 3845444, at *1, *11 (virtual avatars). In all three cases, the courts denied motions to dismiss based on specific allegations, holding that the plaintiffs had sufficiently pled the defendants had offered and sold the NFTs as investment contracts, and thus were securities. *Id.* The courts applied the *Howey* test's three distinct elements, (1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits to be derived solely from the efforts of individuals other than the investor, *see Williamson v. Tucker*, 645 F.2d 404, 417 (5th Cir. 1981), to each NFT offering—not to NFTs in general. *See id.* These Section 5(a) civil suits are not to be confused with the Enforcement Actions. Plaintiffs claim they face a credible threat of enforcement based on the Enforcement Actions, not from these three decisions. *See* R. Doc. 1 at ¶ 145.

In addition to the Enforcement Actions, Plaintiffs point to the SEC's actions in the general

4

digital asset space. R. Doc. 1 at ¶¶ 48-68. First, in 2019, an SEC division published a 60-factor "Framework" for analyzing whether a digital asset may or may not be a security.[4] *Id.* at ¶ 55. But in the same breath, Plaintiffs claim that "the SEC has provided no constructive guidance" despite the Framework because the SEC sets it policy in case-by-case enforcement actions. *Id.* at ¶ 56. To highlight the lack of guidance, Plaintiff compares then SEC Chairman Gary Gensler's public remarks—that the "vast majority" of tokens are securities to the view of then SEC Director of the Division of Corporate Finance William Hinman, who said digital tokens are not securities. *Id.* at ¶ 63. However, Plaintiffs assert that the SEC's position today is that "digital assets can be securities *if* the efforts of third parties drive the value of the ecosystem with which the asset is associated." *Id.* at ¶ 65-66.

Plaintiffs allege their offerings are substantially similar to those in the Enforcement Actions. *See, e.g.*, R. Doc. 1 at ¶ 12. They allege their offerings are not share in a company and do not generate any type of dividend or ongoing commitment to generate profits for the purchasers. *Id.*

## 2. Procedural History

The Securities Act gives the SEC the power to regulate securities. 15 U.S.C. § 77a *et. seq*. The *Howey* test lays out the factors courts use to determine whether an offering is an "investment contract" and therefore can be regulated as a security. *Tucker*, 645 F.2d at 417.

---

[4] SEC, *Framework for "Investment Contract" Analysis of Digital Assets (Apr. 3, 2019)*, https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets (a 60-factor non-exhaustive inquiry to determine whether a *digital asset* may constitute a security under *Howey*.) The Framework openly "identifies some of the factors market participants should consider" but are "not intend to be exhaustive in evaluating whether a digital asset is an investment contract." *Id.*

Plaintiffs sued the SEC and its commissioners seeking a declaratory judgment that their proposed offerings are not a security under the *Howey* test. R. Doc. 1 at ¶¶ 149 –162. Soon after, the SEC filed this motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). R. Doc. 18.

The SEC asserts three jurisdictional barriers: (1) sovereign immunity, (2) standing, and (3) ripeness. *Id.* On sovereign immunity, the SEC argues Plaintiffs' case was brought under the general provisions of the APA (5 U.S.C. § 551 *et seq*.) and is unreviewable because Plaintiffs do not identify a final agency action. R. Doc. 18-1 at pp. 19-20. The SEC also argues Plaintiffs do not present a justiciable case or controversy. *Id.* at at pp. 23-33. On standing, the SEC claims Plaintiffs do not identify a concrete and imminent injury because there is no indication Plaintiffs will be subject to civil liability for offerings they have sold for years. *Id.* at pp. 23-27. And for ripeness, the SEC argues the issue is not fit for judicial decision because it requires the Court to opine on unknown but dispositive future factual allegations. *Id.* at pp. 28-33.

Plaintiffs oppose all three barriers. R. Doc. 21. On sovereign immunity, Plaintiffs first frame their complaint as a First Amendment challenge arguing that the registration requirement is an unconstitutional prior restraint on speech. *Id.* at pp. 16-18. Even if the First Amendment was not implicated, Plaintiffs assert they properly assert a 5 U.S.C. § 702 sovereign immunity waiver for this non-APA claim. *Id.* at pp. 16-23. Plaintiffs contend the Enforcement Actions, Cease-And-Desist Orders, and public statements from SEC commissioners on NFT regulation are an "agency action" within the meaning of § 702. *Id.*

On the justiciability defenses, Plaintiffs argue the SEC's public statements and prior enforcement actions credibly proscribe Plaintiffs' proposed conduct. *Id.* at pp. 24-34. And because

6

such conduct is credibly proscribed, Plaintiffs claim that releasing their product creates an imminent injury that does not require future factual development. *Id.*

## LAW & ANALYSIS

1. **Rule 12(b)(1) Standard**

Federal courts are courts of limited jurisdiction and possess power over only those cases authorized by the United States Constitution and federal statutes. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). A party may raise the lack of subject matter jurisdiction at any time during the litigation in a motion to dismiss pursuant to Rule 12(b)(1). *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004); Fed. R. Civ. P. 12(b)(1).

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on more documents than in a motion to dismiss under Rule 12(b)(6). *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) ("the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case'"). A court may find subject matter jurisdiction is lacking from "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction carries the burden of proving that the court has subject matter jurisdiction. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). At this stage, he must do so through a "plausible set of facts . . .." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012). If a plaintiff cannot invoke subject matter jurisdiction, the court should dismiss the action with prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010).

2. **Plaintiff's Complaint Proceeds Under the General Provisions of the APA**

As a threshold matter, the Court must determine the substantive cause of action under which Plaintiffs' claims may proceed.

In the Complaint, Plaintiffs' first and only count is a "declaratory judgment." R. Doc. 1 at ¶¶ 149–163. They claim "the suit arises and is brought under the Declaratory Judgment Act [DJA], 28 U.S.C. § 2201 *et seq*.," and argue this triggers federal question jurisdiction pursuant to 28 U.S.C. § 1331. *Id.* at ¶ 20. Plaintiffs assert that "a party faced with a 'genuine threat of enforcement' [can] bring suit to seek a declaration to determine the legality of an expected government enforcement action." *Id.* at ¶ 150 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)). True, a claimant is allowed to seek a declaratory judgment in federal court for action that is threatened by government before bringing suit. *MedImmune, Inc.*, 549 U.S. at 129. In this case, Plaintiffs ask the Court to "declare that their offerings do not violate the [] Securities Act." *Id.* at ¶ 163.

But Plaintiffs' claims cannot proceed under the DJA. The DJA does not waive the sovereign immunity of the United States. *Shields of Strength v. U.S. Dep't of Def.*, 742 F. Supp. 3d 721, 724 (E.D. Tex. 2024) (citing *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956)). The Act is a procedural mechanism for the court's remedies and does not provide for an independent cause of action. *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001). Rather, the viability of a party's request for declaratory relief is dependent on another substantive cause of action. *See, e.g.*, *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990). And 28 U.S.C. § 1331 "alone does not provide jurisdiction for agency actions unless a statute, such as the APA, has waived sovereign immunity."

*Elldakli v. Garland*, 64 F.4th 666, 670 (5th Cir. 2023). "[T]he relevant cause of action must arise under some other federal law." *Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996).

      Beyond the DJA, Plaintiffs do not make clear what substantive law they invoke. Argued for the first time in Plaintiffs' opposition, Plaintiffs attempt to re-frame the Complaint to assert a First Amendment violation. R. Doc. 21 at pp. 16-18. They claim that requiring NFTs to be registered as securities before they can be offered or sold is an unlawful prior restraint in violation of the First Amendment. *Id.* at pp. 17. However, nowhere in the Complaint do Plaintiffs allege a First Amendment claim, or even mention the Constitution. *See generally* R. Doc. 1. Indeed, Plaintiffs explicitly limit their complaint to "a declaratory judgment that their proposed NFT offerings do not violate U.S. securities laws—i.e., that they would not be engaging in the offer and sale of securities by merely publicly offering and selling ***their*** art." *Id.* at ¶ 19 (emphasis added). A declaration that their offerings, under the fact intensive and multi-factor *Howey* test, are not an "investment contract" does not say that the SEC lacks authority to regulate ***any*** NFT. Regardless, Plaintiffs cannot amend the Complaint in a response to a motion to dismiss. *See Mun. Employees' Ret. Sys. of Michigan v. Pier 1 Imports, Inc.*, 935 F.3d 424, 436 (5th Cir. 2019).

      The Court agrees with the SEC that the Complaint is best construed as a general APA claim (5 U.S.C. § 551 *et seq*.). Plaintiffs cite to the APA as the purported waiver to sovereign immunity, 5 U.S.C. § 702, and consistently argue the SEC has exceeded its statutory authority when regulating digital assets. R. Doc. 1 at ¶¶ 161, 13, 18, 68, 119; *see also* R. Doc. 21 at p. 22 ("Plaintiffs instead are challenging the SEC's incorrect interpretation of an 'investment contract' and exercise of its enforcement powers beyond its statutory mandate, which 'can be reviewed to determine whether the agency exceeded its statutory powers.'"). Plaintiffs do not mention any

other statutory or *ultra vires* common law cause of action in the Complaint. The question of whether agency action exceeds its statutory authority is a quintessential APA claim. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("[T]he APA requires" "[c]ourts [to] exercise their independent judgment in deciding whether an agency has acted within its statutory authority."); *see also* 5 U.S.C. § 704; *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 372 (7th Cir. 1983) ("The jurisdiction of the federal courts to review administrative action is codified in the Administrative Procedure Act.").

The Court will thus construe Plaintiffs' claim as an action under the general provisions of the APA.[5]

### 3. The SEC Is Entitled to Sovereign Immunity

Irrespective of what cause of action under which Plaintiffs' claims ultimately proceed, they must show a waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Absent congressional authorization – through an unequivocal statutory waiver – it is "unquestioned" that the federal government retains sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 749 (1999).

Plaintiffs contend § 702 of the APA waives sovereign immunity. R. Doc. 1 at ¶ 161. To

---

[5] Also raised for the first time in opposition, Plaintiffs' claim the relevant cause of action underlying Plaintiffs' DJA suit is Section 5 of the Securities Act. R. Doc. 21 at p. 21. But Section 5 imposes obligations on the offerors of unregistered securities, not the SEC. Section 5 makes it unlawful for any person (directly or indirectly) to: "(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e. And Section 12(a) of the Securers Act allows the purchasers of a security to sue the offeror. 15 U.S.C. § 77l(a)(1). Because the Court reads the Complaint to challenge whether their projects are securities under the Securities Act, not that the SEC purchased unlicensed securities from Plaintiffs, a claim under the general provisions of the APA is better supported.

state a § 702 waiver Plaintiffs must: (1) identify "agency action affecting [Plaintiffs] in a specific way" and (2) show they "suffered legal wrong because of the challenged agency action." *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 489 (5th Cir. 2014) (citiation omitted).

However, because Plaintiffs seek judicial review under the general provisions of the APA, they must identify a "final agency action" for this Court to exercise jurisdiction. *Id.* "[F]inal agency actions are actions which (1) 'mark the consummation of the agency's decisionmaking process,' and (2) 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (en banc) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). "The Supreme Court has long taken a pragmatic approach to finality, viewing the APA's finality requirement as flexible." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). Ultimately though, "[w]hat matters is whether the [action] has practical binding effect such that affected private parties are reasonably led to believe that failure to conform will bring adverse consequences." *Id.* at 442.

Plaintiffs identify the Enforcement Actions, SEC commissioners' public statements, and the Cease-And-Desist Orders as "agency actions," and claim that they mark NFT offerings to be unlawful securities transactions when accompanied by royalties and public marketing statements. R. Doc. 20 at p. 20 (citing R. Doc. 1 at ¶¶ 84-104). While they might be "agency actions[,]" these actions are not final.

First, the commencement of SEC "enforcement actions do[es] not constitute final agency actions." *Consensys Software, Inc. v. Sec. & Exch. Comm'n*, 749 F. Supp. 3d 736, 742 (N.D. Tex. 2024) (citing *Dow Chem. v. EPA*, 832 F.2d 319, 325 (5th Cir. 1987)); *see also Broadstreet, Inc. v. Sec. & Exch. Comm'n*, No. 4:24-CV-00803-O, 2025 WL 417933, at *4 (N.D. Tex. Feb. 6, 2025).

In *Consensys*, a plaintiff in the digital asset space brought a declaratory judgment action against the SEC. 749 F. Supp. 3d at 736. The plaintiff, like here, argued that an SEC enforcement action against another party in a similar case was a final agency action. *Id.* at 742. The Court disagreed. *Id.* It applied binding Fifth Circuit precedent, which holds that the commencement of "an enforcement suit do[es] not impose the kind of legal obligations with which finality doctrine is concerned." *Id.* (quoting *Dow Chem.*, 832 F.2d at 325). In *Dow Chem.*, the Fifth Circuit relied on the Supreme Court precedent in *FTC v. Standard Oil Company of California*, which held that filing an enforcement action was not a final agency action. *Id.* (citing 449 U.S. 232, 239-45 (1980)). That principle was recognized again this year in a similar declaratory judgment action where the plaintiffs alleged the SEC lacked the statutory authority to regulate their conduct. *Broadstreet, Inc.*, 2025 WL 417933, at *4.

Regardless, there is no indication that the SEC's decision to instigate an enforcement action against three discrete NFT offerings is tantamount to a final SEC action stating that all NFT offerings in all circumstances are securities. Indeed, in the *Impact Theory* enforcement action, SEC Commissioners Peirce and Uyeda issued a dissent and expressed their view that NFT sales should not be regulated under *Howey*. R. Doc. 1 at ¶ 93. To them, the SEC "should have grappled with these questions long ago and offered guidance when NFTs first started proliferating."[6] Their view is shared with Plaintiffs who claim that the SEC has provided "no constructive guidance." R. Doc. 1 at ¶ 56.

Yet precisely because the SEC has provided little guidance indicates there is no final

---

[6] SEC Comm'rs Hester M. Peirce and Mark T. Uyeda, *NFTs & the SEC: Statement on Impact Theory, LLC* (Aug. 28, 2023), https://www.sec.gov/news/statement/peirce-uyedastatement- nft-082823

12

agency action. The issue is far from settled. Plaintiffs cannot point to a "settled agency position" that gives "marching orders" to a regulated entity. *Texas v. United States Dep't of Health & Hum. Servs.*, 681 F. Supp. 3d 665, 682 (W.D. Tex. 2023) (describing elements of a final agency action) (citing *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020–23 (D.C. Cir. 2000)). The SEC's other enforcement actions do not bind the SEC to any set policy in all NFT offerings or suggest a particular course of action going forward. *See Luminant Generation Co. v. U.S. E.P.A.*, 757 F.3d 439, 442 (5th Cir. 2014) (because an agency was not bound to a particular course of action, their actions were not final).

Second, the Cease-And-Desist Orders in this case are no different than the commencement of an enforcement action. They mark the beginning of the SEC's decision-making process and are part of what Plaintiffs identify as the Enforcement Actions.[7] The orders call only for the "institut[ion]" of "proceedings." *Id.* Accordingly, they are not "[a]'final agency action.' . . . [because the Cease-And-Desist Orders represent] only the beginning of the . . . process, not its consummation." *See Rueth v. U.S. E.P.A.*, 13 F.3d 227, 231 (7th Cir. 1993). Numerous district courts have reached the same conclusion with similar cease-and-desist orders. *See, e.g.*, *Leslie Salt Co. v. United States*, 789 F.Supp. 1030, 1033–34 (N.D. Cal. Dec. 31, 1991) ("issuance of cease and desist orders are not sufficient to create jurisdiction . . ."); *Lafayette City-Par. Consol. v. Gov't of St. Martin Par.*, No. CV 22-1127, 2023 WL 6307998, at *7 (W.D. La. Aug. 11, 2023) ("cease-and-desist order" that indicated "apparent" violations before "proceed[ing]" with appropriate legal

---

[7] *See In re Flyfish Club, LLC*, Securities Act Release No. 11305, 2024 WL 4203737 (Sept. 16, 2024); *In re Impact Theory, LLC*, Securities Act Release No. 11226, 2023 WL 5530012 (Aug. 28, 2023); *In re Stoner Cats 2, LLC*, Securities Act Release No. 11233, 2023 WL 5956272 (Sept. 13, 2023) (enforcement actions)

13

actions is not a final agency order); *Spring Branch Wildlife Pres. v. EPA*, 2021 WL 6503917, at *1 (S.D. Tex. Sept. 17, 2021), *aff'd*, 2022 WL 9914735 (5th Cir. Oct. 17, 2022) ("cease-and-desist order" that outlined possible enforcement options was not a final agency action).

Plaintiffs also rely on a series of statements from then Chairman Gary Gensler who stated that he "believed the vast majority [of tokens in the crypto market] are securities." R. Doc. 1 at ¶ 62.[8] But these statements reflect Gensler's personal views.[9] Even if they were not so limited, Gensler's use of the word "tokens" reasonably encompasses all digital assets, including fungible tokens like Bitcoin and Ethereum. *See id.* Nevertheless, there is no indication that his speeches are a final commission wide policy on NFTs.

The same is true for a 2018 speech given by William Hinman, the then-SEC Director of the Division of Corporate Finance. R. Doc. 1 at ¶ 62. Indeed, the Ninth Circuit explicitly rejected such argument that his statements were a final agency action. *Hodl L., PLLC v. U.S. Sec. & Exch. Comm'n*, No. 23-55810, 2024 WL 3898607, at *2 (9th Cir. Aug. 22, 2024). "Hinman explicitly stated that the contents of the speech constituted his personal views, and the speech is therefore not 'a definitive statement of [the] agency's position.'" *Id.* (citing *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 780 (9th Cir. 2000)).

---

[8] SEC Chair Gary Gensler, *Statement on Financial Stability Oversight Council's Report on Digital Asset Financial Stability Risks and Regulation Before the Financial Stability Oversight Council Open Meeting* (Oct. 3, 2022), https://www.sec.gov/news/speech/gensler-statement-fsocmeeting- 100322 ("Of the nearly 10,000 tokens in the crypto market, I believe the vast majority are securities.")

[9] SEC Chair Gary Gensler, *Prepared Remarks of Gary Gensler On Crypto Markets - Penn Law Capital Markets Association Annual Conference* (Apr. 4, 2022), https://www.sec.gov/news/speech/gensler-remarks-crypto-markets-040422 ("As is customary, I'd like to note that my views are my own, and I'm not speaking on behalf of the Commission or the SEC staff."); SEC Chair Gary Gensler, Remarks Before the Aspen Security Forum (Aug. 3, 2021), https://www.sec.gov/news/speech/gensler-aspen-security-forum-2021-08-03 (same).

Neither speech was the product of the SEC's formal voting or delegation procedures and does not indicate an official agency position. The Fifth Circuit has also recognized that informal statements, even in social media posts from an agency's official account, were not final agency actions because they did not "determine[] rights, produce[] obligations, or cause[] legal consequences." *Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 594 (5th Cir. 2023) (citation omitted). For as many statements Plaintiffs identify in support of regulating NFTs, they cite Commissioners who oppose them. These conflicting viewpoints hardly reflect a "settled agency position" that the entire agency intends to follow. *Neese v. Becerra*, No. 2:21-CV-163-Z, 2022 WL 1265925, at *9 (N.D. Tex. Apr. 26, 2022) (quoting *Appalachian Power Co. v. U.S. Env't Prot. Agency*, 208 F.3d 1015, 1020–23 (D.C. Cir. 2000)).

The SEC's future regulation of NFTs is far from resolved. There is little guidance. But the Supreme Court has "prohibit[ed] challenges that seek 'wholesale improvement' of an agency's programs by court decree, rather than through Congress or the agency itself where such changes are normally made." *Alabama-Coushatta*, 757 F.3d at 490 (citing *Sierra Club*, 228 F.3d at 566 (5th Cir. 2000); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 877-79 (1990)). Without final agency action, the SEC is entitled to sovereign immunity.

### 4. **Plaintiffs' Claim Is Not Ripe**

Even assuming Plaintiffs sufficiently alleged a non-APA claim, showed a waiver of sovereign immunity, and had standing, their claim is not ripe. They are unable to satisfy the first ripeness prong—that their claims are fit for judicial review.

"A declaratory judgment action is ripe for adjudication only where an actual controversy exists." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (internal quotation marks

and citation omitted). "A declaratory judgment action, like any other action, must be ripe in order to be justiciable[.]" *TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 332 (5th Cir. 2017) (cleaned up). Accordingly, "[a] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003). The ripeness inquiry asks whether (1) the issues are fit for judicial decision and (2) will the plaintiffs suffer hardship from withholding judicial review. *Walmart Inc. v. DOJ*, 21 F.4th 300, 311 (5th Cir. 2021).

When analyzing fitness, courts consider three factors: "whether the issue presented is a purely legal one, whether consideration of that issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Id*. (quoting *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986)). "Failure on even one of [these] prongs can render a case unfit for judicial review." *Id.*

First, for the reasons discussed above, Plaintiffs cannot point to a "sufficiently final" agency action. A "sufficiently final" agency action is treated the same as a "final agency action" under the APA. *See Broadstreet, Inc.*, 2025 WL 417933 at *3 (citing *Walmart Inc.*, 21 F.4th at 313). The Supreme Court construes the finality requirement "within the meaning of § 10 of the Administrative Procedure Act, 5 U.S.C. § 704." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967). The same ripeness test applies "regardless of whether suit is brought under the APA." *Walmart Inc.*, 21 F.4th at 311 n.10. Without a "sufficiently final" action, Plaintiffs fail on judicial fitness.

Plaintiffs also cannot show that this litigation presents a purely legal question. The Court agrees with the SEC that Plaintiffs are "not challenging agency action; rather, they are contesting a theoretical future investigation or enforcement action." R. Doc. 34 at p. 9; *see also* R. Doc. 1 at

16

¶ 19, 163 (Plaintiffs seek "a declaratory judgment that their proposed NFT projects do not violate U.S. securities laws"). They seek to determine the scope of the Securities Act in the context of this case. Whether Plaintiffs' NFT offerings are an "investment contract" under *Howey* necessarily requires further factual development. The *Howey* test requires courts to consider future, unknown actions—such as what exact marketing techniques Plaintiffs used to promote their NFTs after they were released. *See, e.g.*, *Friel*, 657 F. Supp. 3d at 443 (finding contemporaneous Tweets and emojis that suggested a financial return on investment could satisfy the expectation of future profits prong). Thus, at best, this case is a mixed question of law and fact unripe for a pre-enforcement action. *See Broadstreet, Inc.*, 2025 WL 417933, at *3.

Plaintiffs' reliance on *Braidwood v. EEOC*, 70 F.4th 914 (5th Cir. 2023) is misplaced. There, a group of Christian employers sought a declaratory judgment that Title VII, as applied in an EEOC guidance document which prohibited specific employment actions on the basis of sexual orientation or gender identity, violated the Free Exercise Clause of the First Amendment. *Id.* The Fifth Circuit concluded this pre-enforcement action was ripe. *Id.* at 930-932. On fitness, the Court concluded the case did not need more factual development because the EEOC guidance set out prohibited practices and the EEOC already admitted the plaintiffs' actions would violate the guidance. *Id.* at 931. And since the court concluded the plaintiffs were forced to abandon their practices or violate the guidance, they would suffer hardship from delayed judicial review. *Id.* at 931-32.

The Court finds this case distinguishable. First, in *Braidwood*, "[n]o party dispute[d] that under current EEOC guidance, neither [plaintiff] c[ould] fire any employee for nonconformance with the [plaintiff's] challenged religious beliefs." *Id.* at 931. The EEOC guidance also determined

17

unequivocally that certain employment practices were unlawful. Whereas here Plaintiffs do not rely on any applicable agency guidance. To the contrary, they allege that the SEC has not provided any guidance on NFTs. *See, e.g.*, R. Doc. 1 at ¶ 56 ("[T]he SEC has provided no constructive guidance."). Second, the *Braidwood* plaintiffs "admit[ted] they [were] breaking EEOC guidance, which the EEOC [did] not seriously contest." 70 F.4th at 926. Plaintiffs suggest the exact opposite—that their proposed offerings do not violate the Securities Act because they are not an "investment contract." R. Doc. 1 at ¶ 163 (asking the Court "[d]eclare" the projects "would not violate Sections 5(a) or 5(c) of the Securities Act"). And finally, the *Braidwood* plaintiffs made an explicit First Amendment challenge. 70 F.4th at 921. The Complaint makes no such claim but rather asks the Court to resolve a mixed question of fact and law and issue a declaration as to the scope of the Securities Act. *See, e.g.*, R. Doc. 1 at ¶ 19 (asking the Court declare that "their proposed NFT projects do not violate U.S. securities laws"). Accordingly,

**IT IS ORDERED** that the SEC's Motion to Dismiss, R. Doc. 18, is **GRANTED**. The Complaint is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 30th day of September 2025.

_____<br>
GREG GERARD GUIDRY<br>
UNITED STATES DISTRICT JUDGE